UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV 12         4874

RICKY WEISENBERG, by and through his guardians, ELLEN AND HARVEY WEISENBERG,

Plaintiff,

v.

DWAYNE EDWARDS, NYSARC INC – NASSAU COUNTY CHAPTER D/B/A AHRC NASSAU,

Defendants.

Index No.

**COMPLAINT**

FEUERSTEIN, J.

BOYLE, M.J.

Plaintiff, Ricky Weisenberg, by and through his guardians, Ellen and Harvey Weisenberg, as and for his Complaint alleges as follows:

### NATURE OF THE CASE

1. New York State Assemblyman Harvey Weisenberg is one of the leading advocates for the rights of the disabled. He and Ellen Weisenberg are also the parents of Ricky Weisenberg. Ricky is an adult with a developmental disability. Though fifty-four years old, Ricky lives the life of a child. He relies upon the care and support of others to take care of him. He can smile and love. But Ricky cannot speak or cry. And while in the care of AHRC Nassau, a private organization serving the disabled and regulated by New York State, Ricky was himself subjected to physical and emotional abuse, and a basic depravation of his own humanity, by AHRC employee Dwayne Edwards.

2. Edwards was a staff member in Ricky's home, responsible for taking care of Ricky. But Edwards didn't take care of Ricky; he abused him. Mr. Edwards cruelly and repeatedly physically struck Ricky just to see him flinch, jump or cry out. Edwards verbally abused Ricky, telling him to "shut the f*** up" and calling him names like "f***ing jew" and the "Gurgitator."

3. Mr. Edwards's sadistic and inhumane treatment of Ricky violates federal and state law designed to protect the disabled from abuse and discrimination. Accordingly, this action arises under Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794 *et seq.* and implementing regulations, the Medicaid Act, 42 U.S.C. § 1320 *et seq.*, and Federal Nursing Home Reform Act (the "FNHRA"), 42 U.S.C. § 1396v *et seq.*, and implementing regulations, Article 15 of New York State Executive Law (the "New York State Human Rights Law") and implementing regulations, Title 8 of the Administrative Code of the City of New York (the "New York City Human Rights Law"), and state common law.

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a), 1367(a).

5. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

6. Ricky Weisenberg is fifty-four years old. Ricky suffers from a profound range of mental retardation. Ricky lives at AHRC Nassau, a residential facility for persons with developmental disabilities in Nassau County.

7. At all relevant times herein, Dwayne Edwards was an employee working within the scope of his employment at AHRC Nassau. On information and belief, Mr. Edwards is employed as a direct care giver by the United Cerebral Palsy Association of Nassau County, Inc. and resides in Nassau County, New York.

8. NYSARC INC – Nassau County Chapter, d/b/a AHRC Nassau ("AHRC") has offices at 189 Wheatley Road, Brookville, NY 11545. On information and belief,

AHRC was established in 1949, and is a chapter organization of NYSARC, Inc. and provides services to approximately 2,200 individuals with developmental disabilities, including residential services, adult day habilitation and community-based services, vocational and employment services, guardianship, family support services and recreation opportunities. AHRC also provides Medicaid service coordination services and accepts Medicaid payments from its clients, including Ricky Weisenberg.

### JURY DEMAND

9. Plaintiff demands trial by jury in this action.

### FACTS

10. Ricky was born in 1958. Despite the prevailing attitude of the times that would have seen him institutionalized as a baby, he was kept at home and lovingly cared for until he was five. Eventually, his needs were greater than could be met at home, and his parents began the wrenchingly painful ordeal of placing him in a facility and entrusting his care to others.

11. When Ricky's parents moved him to AHRC, they thought AHRC was a safe place where the facility and its staff would take care of their son. But after making a request to see internal reports concerning one of Ricky's caregivers, Dwayne Edwards, they were shocked to learn how gravely this trust had been betrayed.

12. As AHRC's own internal investigation substantiated, in between Ricky's parents' visits, Dwayne Edwards habitually subjected Ricky to sadistic and demeaning abuse.

13. In and about April 2009, AHRC conducted an investigation into a report that "Dwayne Edwards has been hitting, plucking, jerking, and cursing at Eric 'Ricky'

3

Weisenberg." In the course of AHRC's investigation, it interviewed several staff members who corroborated the report that Edwards had been abusing Ricky.

14. Genene Walker, a staff member, told investigators that she had "seen Dwayne [Edwards] hit the [sic] individuals such as Ricky. Dwayne plucks Ricky in the back of his neck and hits him in the back of his head. This has been going on since I started working there." "Ricky jumps," she reported, "when Dwayne plucks him. Dwayne will say shut the f*** up and, and get in the chair."

15. Faith McGhee, another staff member, also reported that she saw Dwayne Edwards flip his finger on Ricky's neck and that Ricky "moves and makes a noise" in response.

16. Carl Campbell, a lead staff member, told investigators that Dwayne Edwards used "loud speaking to the residents, and inappropriate language, used in a disrespectful manner." Campbell also reported that he "witnessed him [Edwards] flip Ricky's ears with his finger. He said that he can't stand him, and get him out of here. He's said that he is evil, and he talks [a]bout the smell, saying that he made a mess. He has used the term f***en Jew, and has called Ricky the 'Gurgitatator' [sic]. He also used the words nasty and worthless."

17. The report went on to conclude: "the allegation of physical and psychological abuse is <u>substantiated</u>."

18. As a result of the foregoing, Ricky has suffered substantial physical and emotional pain and suffering.

## FIRST CLAIM FOR RELIEF
Section 504 of the Rehabilitation Act, 29 U.S.C. § 794
(Against AHRC)

19. Plaintiff repeats and realleges the foregoing paragraphs of his complaint as though fully set forth herein.

20. At all times material to this action, AHRC was a recipient of funds granted to the state of New York pursuant to the Medicaid Act and was therefore subject to Section 504 of the Rehabilitation Act.

21. Plaintiff is an otherwise qualified individual and is disabled within the meaning of the Rehabilitation Act.

22. AHRC, by all of the above, by failing to provide plaintiff with the necessary and proper care and supervision, and by abusing and neglecting plaintiff, denied plaintiff the opportunity to fully participate in and benefit from AHRC's services, programs, and activities and discriminated against plaintiff by reason of plaintiff's disability in violation of Section 504 of the Rehabilitation Act.

## SECOND CLAIM FOR RELIEF
Medicaid Act, 42 U.S.C. § 1320 et seq., and
the Federal Nursing Home Reform Act, 42 U.S.C. § 1396v, et seq.
(Against AHRC)

23. Plaintiff repeats and realleges the foregoing paragraphs of his complaint as though fully set forth herein.

24. The state of New York accepts federal funds under and therefore is required to comply with the Medicaid Act and the regulations promulgated thereunder by the Secretary of Health and Human Services.

25. At all times material to this action, AHRC was a recipient of funds granted to the state of New York pursuant to the Medicaid Act.

26. At all times material to this action, AHRC operated a residential facility that was under and subject to the requirements of the Medicaid Act, the Federal Nursing Home Reform Act, and the regulations promulgated thereunder.

27. At all times material to this action, AHRC represented and/or certified to an agency of the state of New York that it satisfied the standards, provided the quality of care, and provided to its residents the residential rights as required under federal law, the Medicaid Act, including but not limited to 42 U.S.C. § 1395i-3(b) and § 1396r(g), and the Federal Nursing Home Reform Act.

28. Plaintiff was and is an eligible low-income person within the meaning of the Medicaid Act. During all times relevant to this action, plaintiff was a recipient and beneficiary of Medicaid.

29. Plaintiff was and is a person suffering from mental retardation and developmental disabilities.

30. AHRC, by all of the above, by failing to provide plaintiff with the necessary and proper care and supervision, and by abusing and neglecting plaintiff, violated the rights, protections, service, and level of care guaranteed to plaintiff by the Medicaid Act, the Federal Nursing Home Reform Act, and the regulations promulgated thereunder.

### THIRD CLAIM FOR RELIEF
New York State Human Rights Law, N.Y. Exec. Law § 296 et seq.
(Against All Defendants)

31. Plaintiff repeats and realleges the foregoing paragraphs of his complaint as though fully set forth herein.

32. At all times relevant hereto, AHRC owned and operated a place of public accommodation, a housing accommodation, and a publicly-assisted housing accommodation and, therefore, defendants and their officers, agents, servants and employees were required to comply with the Human Rights Laws of the State of New York, including N.Y. Exec. Law § 296.

33. Plaintiff is disabled within the meaning of the New York State Human Rights Law.

34. N.Y. Exec. Law § 296(2) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

35. N.Y. Exec. Law § 296(2-a) provides that it is "an unlawful discrimination practice for the owner, lessee, sub-lessee, assignee, or managing agent of a publicly-assisted housing accommodation . . . [t]o discriminate against any person because of his . . . disability . . . in the terms, conditions or privileges of any publicly-assisted housing accommodations or in the furnishing of facilities or services in connection therewith."

36. N.Y. Exec. Law § 296(5) provides that it is "unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of . . . a housing

accommodation . . . [t]o discriminate against any person because of . . . disability . . . in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith."

37. Defendants, by all of the above, by failing to provide plaintiff with the necessary and proper care and supervision, and by abusing and neglecting plaintiff, denied plaintiff the accommodations, advantages, terms, conditions, and privileges, and services of a public accommodation, a housing accommodation, and a publicly-assisted housing accommodation by reason of his disability in violation of New York State Human Rights Law. In addition, the aforementioned acts and practices of Edwards constitute aiding and abetting such discrimination.

38. Accordingly, under N.Y. Exec. Law § 297, plaintiff is entitled to damages, including compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

### FOURTH CLAIM FOR RELIEF
New York City Human Rights Law, N.Y. C. Administrative Code § 8-107 et seq.
(Against All Defendants)

39. Plaintiff repeats and realleges the foregoing paragraphs of his complaint as though fully set forth herein.

40. At all times relevant hereto, AHRC owned and operated a place of public accommodation, a housing accommodation, and a publicly-assisted housing accommodation and, therefore, defendants and their officers, agents, servants and employees were required to comply with the New York City Human Rights Law, including N.Y.C. Admin. Code § 8-107.

41. Plaintiff is disabled within the meaning of the New York City Human Rights Law.

42. Defendants' conduct as described above constitutes an unlawful discriminatory practice to refuse, withhold from and deny plaintiff the advantages, facilities and privileges of a place of public accommodation because of his disability, in violation of New York City Admin. Code, § 8-107(4)(a).

43. Defendants' conduct as described above constitutes an unlawful discriminatory practice against plaintiff in the terms, conditions, and privileges of, and the furnishing of facilities and services in connection with a housing accommodation and a publicly-assisted housing accommodation because of his disability, in violation of New York City Admin. Code, § 8-107(5)(a)(2).

44. The Defendants' conduct was intentional, willful, and made in disregard for the rights of others.

45. Accordingly, under the New York Administrative Code § 8-502(a) and (f), plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

46. Plaintiff will serve a copy of the complaint upon the City Commission on Human Rights and Corporation Counsel, pursuant to the New York City Administrative Code § 8-502(c).

**FIFTH CLAIM FOR RELIEF**
Assault and Battery (Against All Defendants)

47. Plaintiff repeats and realleges each of the foregoing paragraphs as if they were fully set forth at length herein.

48. In assaulting, battering, and threatening plaintiff without privilege or consent, and/or standing by and failing to intervene when plaintiff was assaulted, Dwayne Edwards, within the scope of his employment, committed willful, unlawful, unwarranted, and intentional assaults and batteries upon plaintiff.

49. AHRC, as the employer of Dwayne Edwards, is responsible for his wrongdoing under the doctrine of *respondeat superior*.

50. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**SIXTH CLAIM FOR RELIEF**
Intentional/Reckless Infliction of Emotional Distress
(Against All Defendants)

51. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

52. Defendant Edwards repeatedly and intentionally struck Ricky without cause, causing him fear, anxiety and pain. Edwards also repeatedly terrorized, ridiculed, and demeaned Ricky, with psychological and verbal abuse. This conduct was intentional, sadistic and outrageous.

53. As a result of Defendant Edwards's actions, Ricky suffered extreme and severe emotional distress.

54. Defendant Edwards knew that such distress was substantially certain to result from his conduct or, at a minimum, were done in disregard of a substantial probability of causing severe emotional distress.

55. AHRC, as Defendant Edwards's employer, is responsible for his wrongdoing under the doctrine of *respondeat superior*.

56. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### SEVENTH CLAIM FOR RELIEF
Negligent Hiring, Training, Supervision, Discipline, Staffing and Retention
(Against AHRC)

57. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

58. AHRC owed plaintiff a duty of care to hire, train, supervise, discipline, staff, and retain employees that could provide safe, secure, adequate, and necessary one-to-one supervision, toileting, and other services in its programs and residential facilities to developmentally disabled adults.

59. AHRC and its employees owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

60. Upon information and belief, AHRC's employee, Dwayne Edwards, was unfit and incompetent for his position.

61. Upon information and belief, AHRC knew or should have known through the exercise of reasonable diligence that Dwayne Edwards was potentially dangerous to developmentally disabled adults like plaintiff.

62. Upon information and belief, AHRC's negligence in screening, hiring, training, disciplining, and retaining defendants, their officers, agents, servants, and employees proximately caused each of plaintiff's injuries.

## EIGHTH CLAIM FOR RELIEF
Breach of Fiduciary Duty (Against All Defendants)

63. Plaintiff repeats and realleges the foregoing paragraphs of his complaint as though fully set forth herein.

64. At all times relevant hereto, each defendant possessed a fiduciary duty to plaintiff to act in good faith, trust, and candor towards him.

65. Dwayne Edwards, acting as AHRC's employee and within the scope of his employment, breached his fiduciary duties towards plaintiff by all of the above, by failing to provide necessary and adequate supervision and care of plaintiff, by abusing and neglecting plaintiff, by failing to provide information regarding plaintiff's health and injuries to plaintiff and his guardian, by failing to investigate allegations of abuse and neglect of the plaintiff, and by covering up facts demonstrating the abuse and neglect of the plaintiff.

66. AHRC, as the employer of Dwayne Edwards, is responsible for his wrongdoing under the doctrine of *respondeat superior*.

WHEREFORE, plaintiff respectfully request judgment against defendants as follows:

(A) an order awarding compensatory damages in an amount to be determined at trial, including without limitation, damages for Ricky's physical and emotional injuries, conscious pain and suffering; and loss of the enjoyment of life;

(B) an order awarding punitive damages in an amount to be determined at trial;

(C) reasonable attorneys' fees and costs; and

(D) directing such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.

Dated: October 1, 2012
New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

Ilann Maazel
O. Andrew F. Wilson
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
(212) 763-5000

*Counsel for Plaintiff*